UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLUMBERS LOCAL 98 DEFINED
BENEFIT PENSION FUND,
*et al.*,

               Plaintiffs,

                                        Case No. 23-11021

v.                                 U.S. DISTRICT COURT JUDGE
                                       GERSHWIN A. DRAIN

DAN ALLOR PLUMBING AND
HEATING COMPANY, *et al.*,

               Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS DAN ALLOR PLUMBING AND HEATING COMPANY AND DANIEL ALLOR'S MOTION FOR RECONSIDERATION AND FOR CLARIFICATION [#107]

## I.    INTRODUCTION

Presently before the Court is Defendant Dan Allor Plumbing and Heating Company ("DAP") and Daniel Allor's (collectively, the "DAP Defendants") Motion for Reconsideration and for Clarification [#107], filed on March 26, 2025. With respect to the Court's opinion resolving the parties' motions for summary judgment, the DAP Defendants seek reconsideration of the Court's finding that (1) DAP and Allor Plumbing LLC ("AP") are alter egos of one another, and (2) Daniel Allor is a

plan fiduciary with respect to DAP's and AP's unpaid fringe benefit contributions. They also seek clarification as to what constitutes "work covered by the CBA." Defendants Patrick Day and AP filed a concurrence on March 26, 2025. For the reasons that follow, this Motion is DENIED.

## II.    LEGAL STANDARD

Under Eastern District of Michigan Local Rule 7.1(h)(2), a party may file a motion for reconsideration of a non-final order only if: (A) "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision"; (2) "[a]n intervening change in controlling law warrants a different outcome"; or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." E.D. Mich. L.R. 7.1(h)(2). "Motions for reconsideration of non-final orders are disfavored." *Id.* "A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 628, 633 (E.D. Mich. 2001); *see also Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 780 (E.D. Mich. 2010) ("It is an exception to the norm for the Court to grant a motion for reconsideration . . . . [A]bsent a significant error that changes the outcome of a ruling on a motion, the Court will not provide a party with an opportunity to relitigate

issues already decided.").

"It is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a [decision] was issued.'" *Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 495 (6th Cir. 2012) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007)). By the same token, "a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier." *Id.* (citations omitted). As such, "[a] motion for reconsideration should not be used liberally to get a second bite at the apple, but should be used sparingly to correct *actual* defects in the court's opinion." *Oswald v. BAE Indus., Inc.*, No. 10-cv-12660, 2010 WL 5464271, at *1 (E.D. Mich. Dec. 30, 2010) (citing *Maiberger*, 724 F. Supp. 2d at 780) (emphasis in original).

## III. ANALYSIS

The DAP Defendants ask the Court to "reconsider its finding that there is no triable issue of fact as to [DAP and AP's] alter-ego status and that Defendant Daniel Allor is a fiduciary of the plans." ECF No. 107, PageID.5384. They point to nearly twenty purported errors in the Court's opinion and argue that correcting these mistakes "changes the outcome of this Court's decision, and the mistake[s] [were] made on the existing record at the time this Court issued its decision." *Id.* at PageID.5378. Beyond so claiming, however, they fail to explain *how* correcting each

3

alleged error would change the outcome of this Court's decision. On this basis alone, denial of the Motion is appropriate. To be sure, however, the Court finds that the errors alleged by the DAP Defendants are unfounded and do not impact the Court's conclusions that (1) DAP and AP are alter egos of one another, and (2) Daniel Allor is a plan fiduciary with respect to both DAP's and AP's unpaid fringe benefit contributions.

### A. The Court's Alter Ego Finding

With respect to the Court's alter ego finding, the DAP Defendants first claim that the Court erred in analyzing the "business purpose" factor by finding that DAP's and AP's employees often worked side by side on the same projects and were subject to the same supervision. They argue this conclusion is not supported by the facts for two reasons: (1) "Joseph Fife and Dylan Hillaker testified that Joseph Fife supervised the DAP employees and Jeff Fife supervised the AP employees, not that the companies' employees 'were subject to the same supervision'"; and (2) Joe Fife testified that DAP and AP rarely worked together and that this was "not a common practice." ECF No. 107, PageID.5390.

This claim is deficient. The DAP Defendants fail to offer record citations in

support of their arguments.[1] Furthermore, the DAP Defendants have offered no law nor argumentation demonstrating that the frequency with which DAP and AP employees worked alongside each other and were subject to the same supervision— be it often, as the Court found, or sparingly, as Defendants suggest—is material to the Court's finding that DAP and AP are alter egos of one another.

Second, the DAP Defendants claim the Court's finding that Jeff Fife exercised supervisory authority over DAP and AP employees is unsupported by the record. However, the Court's analysis of the "supervision" factor provides a detailed explanation, supported by record citations, in support of this conclusion. *See* ECF No. 101, PageID.5335-36. The DAP Defendants do not offer any explanation nor evidence demonstrating that the Court erred in relying on these portions of the record.

Third, with respect to the "operations" factor, the DAP Defendants challenge the Court's finding that several of DAP's long-time employees were unaware of AP's existence until relatively recently, claiming this fact does not support the conclusion that DAP and AP were alter egos of one another. The DAP Defendants do not, however, offer any legal authority to support this position.

---

[1] While the DAP Defendants offer a record citation in support of their second argument, it does not support their assertion, as it is a citation to Daniel Allor's deposition transcript.

They further challenge this finding by arguing, for the first time, that the only evidence supporting it comes from "two untimely produced affidavits of Sean Moore and Michael Biber." ECF No. 107, PageID.5390. These affidavits were attached to Plaintiffs' Motion for Partial Summary Judgment. ECF Nos. 78-18, 78-19. As such, the DAP Defendants could have raised this argument in their summary judgment briefing and failed to do so. This argument is thus untimely.

The DAP Defendants also argue that the assertions contained in Mr. Moore's and Mr. Biber's affidavits are contradicted by Patrick Day's affidavit, and thus questions of material fact exist. The DAP Defendants' reliance on Day's affidavit is misplaced. This affidavit was submitted to the Court by Day in support of his Reply to his Motion for Summary Judgment. ECF No. 98-4. With respect to Plaintiffs' corporate veil piercing claim, he used this affidavit to respond to Plaintiffs' claims that "AP was created to take over DAP" and that "Day and Dan Allor did not tell anyone outside of key management employees about the existence of AP." ECF No. 98, PageID.5244.

Under Federal Rule of Civil Procedure 6(c)(2), "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). Rule 6 "is designed to prevent the moving party from springing new facts on the nonmoving party 'when it is too late for that party to contest them.'" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002) (citation omitted); *see also Bridgewater v. Harris*, No. 16-

14112, 2019 WL 3289845, at *4 n.2 (E.D. Mich. July 22, 2019). Notwithstanding, "reply affidavits that respond *only* to the opposing party's brief are properly filed with the reply brief." *Peters*, 285 F.3d at 476 (citations omitted) (emphasis added).

In accordance with these governing principles, the Court considered Day's affidavit only as it related to the claims he was responding to. The Court did not err in declining to consider his affidavit for any other purpose. To consider the affidavit here in connection to Plaintiffs' alter ego claim would be inappropriate, as Plaintiffs have not been afforded the opportunity to respond. The Court also notes that it was Patrick Day—not the DAP Defendants—that introduced this evidence to the Court, filing it after the DAP Defendants completed their summary judgment briefing. While Local Rule 7.1(h)(2) permits a party to file a motion for reconsideration if "new facts warrant a different outcome," the movant must also demonstrate that these facts "could not have been discovered with reasonable diligence before the prior decision." E.D. Mich. L.R. 7.1(h)(2). The DAP Defendants have not made this showing.

Fourth, the DAP Defendants take issue with the Court's reliance on the affidavits of Local 98 representatives Carlo Castiglione and Jonathan DeRoo, claiming, for the first time, that these affiants have not been "qualified as expert witnesses, and there is no legal basis to allow them to opine on the Union's rules surrounding targeting funds, let alone for their interpretations to be relied upon as

establishing these facts." ECF No. 107, PageID.5392. Here too, however, these affidavits were attached to Plaintiffs' Motion for Partial Summary Judgment, and as such the DAP Defendants could have raised this argument in their summary judgment briefing. Furthermore, notwithstanding the untimeliness of this claim, the DAP Defendants offer no explanation as to why these individuals cannot offer affidavits as lay witnesses.

Fifth, the DAP Defendants argue that the Court impermissibly referenced the familial relationships between employees of both companies, suggesting that the Sixth Circuit's decision in *Road Sprinkler Fitters Local Union No. 669 v. Dorn Sprinkler Co.*, 669 F.3d 790 (6th Cir. 2012), prohibits it from doing so. As the DAP Defendants acknowledge, *Dorn Sprinkler* provides that even though managerial personnel may be "related to one another, this does not necessarily mean the overall nature of management is the same in both companies." ECF No. 107, PageID.5392 (quoting *id.* at 795). The Court's decision is consistent with *Dorn Sprinkler*, as the Court did not hold that the familial relationships between several of DAP's and AP's employees are the sole reason why the management factor militates in favor of alter ego status. In fact, the Court did not even discuss this fact when assessing the management factor.

Sixth, the DAP Defendants take issue with the Court's finding that DAP has no records of annual reports, meeting minutes, and meeting agendas, claiming that

DAP files annual reports on a yearly basis and that it is not required to hold meetings or prepare agendas. Here too, however, the DAP Defendants did not raise this fact in their summary judgment briefing. The Court's finding is properly supported by the record that was before it when it adjudicated the summary judgment motions.[2] The Court also notes that the Court's finding related to its corporate veil piercing analysis, not its alter ego analysis.

Seventh, with respect to the "business purpose" factor, the DAP Defendants claim the Court erred in finding that " 'DAP has operated solely for AP's benefit' since at least 2016." ECF No. 107, PageID.5393. They argue that this finding is not supported by the record, as "DAP charged AP its actual costs for every job where DAP provided labor plus a 10% markup," which "shows DAP engaged in a profit-making business, not solely existing to serve AP." *Id.* This claim omits critical context from the Court's opinion. In finding that DAP has operated solely for AP's benefit, the Court reasoned that given that AP has been DAP's sole customer since at least 2016, DAP's "workforce and resources [have been] directed entirely toward supporting AP's business interests." ECF No. 101, PageID.5331. That DAP earned profit from its relationship with AP does not contradict this finding.

---

[2] Specifically, in a response to a discovery request, DAP represented that "[w]ith respect to annual reports, bylaws, meeting minutes and meeting agendas, documentation regarding corporate meetings, and documents that pertain to any corporate resolutions, none exist." ECF No. 78-50, PageID.1829.

Eighth, the DAP Defendants argue that with respect to the "business purpose" factor, the Court erroneously "concluded that DAP's requests for targeting funds [were] for the benefit of AP, when in truth the target funds were so that DAP could present a lower bid and obtain jobs, for which DAP received a profit." ECF No. 107, PageID.5393. This argument contradicts the DAP Defendants' claim—raised several times in their Motion for Summary Judgment and supported by the record— that DAP stopped bidding on work when it became a "staffing agency" in 2014.[3] Furthermore, as set forth in the Court's opinion, there is uncontroverted evidence demonstrating that Daniel Allor specifically requested targeting funds for AP projects, in amounts that Patrick Day indicated were necessary for AP to bid on the project.[4] As such, the Court did not err in finding that DAP requested targeting funds

_____

[3] *See, e.g.*, ECF No. 79, PageID.1933 (noting that in 2014, Daniel Allor "decided to change the primary business of DAP from bidding and working on jobs, to furnishing labor to Allor Plumbing"); *id.* at PageID.1937 ("While it is true that DAP used to be in the same line of work as AP, the two companies' business purposes have been different at all relevant times. AP is in the business of bidding, being awarded, and performing plumbing and other construction jobs. DAP, at all relevant times, has only been in the business of leasing labor to other contractors."); *id.* at 1938 ("DAP is not bidding or responsible for plumbing projects. Instead, it only supplies labor."); *id.* at PageID.1937 ("DAP has not bid any jobs or been responsible for the completion of a contracted project at any point during the relevant period of time.").

[4] As noted in the Court's opinion:

> For example, on September 28, 2018, Patrick Day sent Daniel Allor an email with the subject line "Target Money," stating that AP needed approximately $86,000 to bid on the "Funac" job in Auburn Hills, Michigan. ECF No. 78-13, PageID.1386. Shortly thereafter, DAP submitted a request for approximately

for AP's benefit.

Ninth, with respect to the "operations" factor, the DAP Defendants claim the Court "ignored" the following facts: (1) "that AP leased its [office] space pursuant to an arm's-length lease"; (2) "that DAP separately had its own distinguished private room within that office space"; and (3) "that the clerical work done by AP employees for DAP, which was supervised by DAP, was negotiated for as part of that same lease[.]" ECF No. 107, PageID.5394. The Court did, however, consider these claims, noting in its opinion that "the existence of this [lease] does not negate the substantial overlap between DAP's and AP's operations, and to hold otherwise would allow parties to evade alter ego liability under the guise of an arm's length agreement." ECF No. 101, PageID.5332-33. Furthermore, the DAP Defendants' suggestion that DAP's use of the office space was confined to a secluded area in the office is plainly contradicted by the lease agreement, which states: "Tenant agrees to provide Landlord/Owner [use] of one (1) office space, *use of common spaces, telephone, fax machine, internet, copy equipment, bathrooms for the duration of this lease.*" ECF No. 79-9, PageID.2246 (emphasis added).

Tenth, the DAP Defendants argue that the Court "improperly conclude[d] that

---

$87,000 in Local 98 targeting funds for the "Funac" job, also in Auburn Hills, Michigan. ECF No. 78-14, PageID.1388. As a non-union contractor, AP was itself ineligible to receive these funds.
ECF No. 101, PageID.5331.

AP's customers were DAP's customers, when in fact, no evidence was presented by the Funds that DAP had any customer relationship with AP's customers." ECF No. 107, PageID.5394. Here too, the DAP Defendants misinterpret the Court's opinion. The Court found that the "customer" factor militated in favor of alter ego status, in part because "DAP *indirectly* services AP's clients by supplying labor for their projects. Given that AP is DAP's sole customer, AP's clients are the only entities serviced by DAP." ECF No. 101, PageID.5334 (emphasis added). The DAP Defendants fail to explain how the Court erred in so finding.

Eleventh, with respect to the "management" factor, the DAP Defendants contend that the Court erred in finding that Joe Fife and Jeff Fife are managerial personnel, as "there is no evidence that they have any role in managing the respective companies that employ them." ECF No. 107, PageID.5395. However, the DAP Defendants offer no law nor argumentation demonstrating that the assignment and scheduling of manpower—an operational task that Jeff and Joe Fife were undisputably responsible for—is not managerial in nature. Indeed, cases decided by this Court support a finding that it is. *See, e.g.*, *Trs. of Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.*, No. 11-cv-14656, 2014 WL 1746399, at *13 (E.D. Mich. Apr. 30, 2014) (finding overlap in management where owner of one company *or* his foreman told the employees of another company "where and when to work").

The DAP Defendants also posit that the Court "ignore[d] the involvement of Daniel Allor and Patrick Day in relation to the 'supervision' and 'management' factors, which constitutes an error in applying the law to the facts." ECF No. 107, PageID.5396. Consideration of this fact does not change the Court's determination that the management factor supports a finding of alter ego status, as the Court's finding is supported by evidence demonstrating that there is overlap in those who play a managerial role at DAP and AP. The same is true with respect to the supervision factor.

Twelfth, the DAP Defendants claim that the Court misapplied the law governing alter ego liability, which requires a court to consider, in part, whether the two enterprises have "substantially identical" management, business purpose, operation, equipment, customers, supervision and ownership. In analyzing these factors, the DAP Defendants argue, the Court "employ[ed] amorphous terms like 'overlap' and 'some continuity of workforce,' but stop[ped] short of finding that the factors allegedly weighing in the Funds' favor were of a 'substantially identical' nature." ECF No. 107, PageID.5399.

As made clear in the Court's opinion, the governing case law requires the Court to look for "overlap" when assessing the individual factors. For instance, the management factor "looks to 'the nature of the management structure in the two companies,' including *overlap* in those who 'played a managerial role.'" *Trs. of*

13

*Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 376 (6th Cir. 2019) (emphasis added). The business purpose factor "looks to *overlap* in the type of work performed." *Id.* at 377 (emphasis added). The customer factor "looks to *overlap* in 'customer base' and 'customers.'" *Id.* at 378 (emphasis added). The supervision factor "looks to *overlap* in those who hold supervisory roles." *Id.* (emphasis added). And the ownership factor "looks to *overlap* in those with an ownership interest." *Id.* at 379 (emphasis added). With respect to the Court's finding that there was "some continuity of workforce" between DAP and AP, this fact was merely one of many the Court relied upon in finding that the operations factor strongly militates in favor of alter ego status.

Thirteenth, the DAP Defendants contend that the Court's analysis on the intent factor "makes unsupported conclusions." ECF No. 107, PageID.5396. They do not, however, specify the conclusions they believe are unfounded. Instead, the DAP Defendants merely express disagreement with the Court's findings and recite facts they believe should resolve the matter, without referencing any legal authority to support their positions.

Fourteenth, the DAP Defendants take issue with the Court's finding that the subcontractor agreement enables AP to hire non-union employees in addition to DAP employees. "In actuality," the DAP Defendants claim, "AP never directly hired union employees and was never a signatory to the CBA and was already free to hire

non-union employees regardless of the subcontractor agreement." ECF No. 107, PageID.5386. The DAP Defendants have neither explained how this fact undermines the Court's finding nor clarified its relevance to the Court's alter ego determination.

Lastly, the DAP Defendants contend that the Court "ignore[d] significant facts presented in the . . . Daniel Allor affidavit[] that raise issues of material fact that preclude summary judgment. For instance, Daniel Allor cited to provisions of the CBA that DAP did not follow after sending the withdrawal letters in 2009[.]" ECF No. 107, PageID.5392. Here too, the DAP Defendants fail to explain how this fact bears on the Court's alter ego determination. They also do not identify any other facts contained in Daniel Allor's affidavit that create questions of fact.

In sum, the Court finds that no mistake in the Court's alter ego determination has been identified. Reconsideration on these bases is thus denied.

### B. The Court's Finding that Daniel Allor is a Plan Fiduciary

Next, the DAP Defendants claim the Court erred in finding that Daniel Allor is a plan fiduciary, arguing that "[t]here is no claim that DAP withheld or separated funds to be paid to Plaintiffs, nor is there any evidence that this happened." ECF No. 107, PageID.5402. In support of this argument, the DAP Defendants rely on this Court's decision in *Trustees of Michigan Regional Council of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*, 33 F. Supp. 3d 884, 892 (E.D. Mich. 2014), which they posit stands for the proposition that "funds do not become assets of the plan

until they are withheld from wages by an employer, as of the earliest date on which such contributions or repayments can be reasonably segregated from the employer's general assets." ECF No. 107, PageID.5401-02.

In *Stubbs*, the Court stated that "it is well-settled that if an employer withholds a portion of employee wages for the purpose of paying the funds, the withheld wages are plan assets." *Id.* at 889. The Court noted that "[t]his rule derives directly from the Department of Labor's regulations implementing ERISA," which provide as follows:

> [T]he assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, *or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan*, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

*Id.* (quoting 29 C.F.R. § 2510.3-101) (emphasis in original). The Court then reasoned that this rule does not apply to cases where *employer* contributions are at issue. *See id.* Thus, given that employer contributions are at issue in the present case, this rule does not apply here.

Indeed, in *Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers of Michigan, Inc.*, 608 F. Supp. 2d 873 (E.D. Mich. 2009)—a case involving delinquent employer contributions, as well as the Plaintiffs in the present case—this Court rejected an argument similar to the one advanced by the DAP Defendants. There, the owner of a plumbing contractor company argued that he was

not a plan fiduciary because "an employer is only responsible for unpaid contributions when he formally withholds them from employee wages for purposes of making fringe benefit contributions." *Id.* at 876. The Court rejected this claim, stating that it "does not overcome the principle that unpaid contributions become plan assets when due." *Id.* at 879. Furthermore, the Court reasoned, "the CBA and trust agreements in this case simply do not contemplate [this argument]; rather, by their terms, they set out a clear obligation to make contributions on a monthly basis and to treat these unpaid contributions as inalienable plan assets." *Id.* Specifically, the CBA provided that the defendant corporation "shall make contributions to the following funds each month to the designated depository for the prior month as provided in the applicable Trust Agreements." *Id.* The trust agreement for the defined benefit plan stated that "[t]he corpus or income of the trust may not be diverted to or used for other than the exclusive benefit of the participants or their beneficiaries," and that "[n]o benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind." *Id.* The Court concluded that the unpaid benefit contributions were plan assets, and as such, the company's owner was a plan fiduciary:

> The special duties imposed by ERISA, federal regulations, the CBA and the trust agreements suggest that monies *not paid* to employees, but required by contract to be set aside for contribution to the Funds, are plan assets entrusted to the employer, to be accounted for by him until such time as they are

17

remitted to the Funds. . . . Although the parties have presented no evidence of withholding from employee paychecks, the Court is constrained to conclude that by paying his employees less than the amount set out in the CBA for the relevant period, while continuing to pay operating costs for the company, [the owner of the company] functionally "withheld" unpaid wages and fringe benefit contributions in violation of his contractual obligations.

*Id.* (emphasis in original).

*M & P Master Plumbers* and the present case bear substantial similarities. First, the Plaintiffs involved in this case were also involved in *M & P Master Plumbers*. Second, like *M & P Master Plumbers*, the CBA obligates DAP to make fringe benefit contributions on a monthly basis, providing as follows: "The fund contributions shall be forwarded each month to the depository designated by the Trustees of the Joint Trust Funds for the prior month as provided in the applicable Trust Agreements[.]" ECF No. 79-3, PageID.1973. Furthermore, the Local 98 defined benefit trust agreement provides that unpaid contributions are inalienable plan assets, using substantially similar language as that noted in *M & P Master Plumbers*:

The corpus or income of the trust may not be diverted to or used for other than the exclusive benefit of the participants or their beneficiaries. No Contributing Employer shall have any right, title or interest in the Fund and neither at the termination of the Plan nor at any other time shall any part of the Fund revert to any Contributing Employer. . . . No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment or encumbrance of any kind.

ECF No. 78-49, PageID.1819. Lastly, just as the *M & P Master Plumbers* Court found that pursuant to ERISA, the CBA, and the trust agreement, the outstanding

18

fringe benefit contributions were plan assets as soon as they were due and owing—irrespective of whether they were withheld from employee paychecks or otherwise segregated—the Court finds the same here. As such, the Court did not err in concluding that Daniel Allor is a plan fiduciary, as DAP's and AP's unpaid fringe benefit contributions are plan assets.

Second, the DAP Defendants argue that the Court erred in finding that Daniel Allor is a fiduciary with respect to AP's unpaid fringe benefit contributions, reasoning that Allor "never had control over the accounts used to make payments to or on behalf of AP's employees, nor would he even be able to assess what those payments could be as he lacked the requisite control and knowledge of the employees and their work to make the calculations." ECF No. 107, PageID.5404-05.

The Court's finding that DAP and AP are alter egos of one another justifies its conclusion that Daniel Allor is a fiduciary with respect to AP's unpaid fringe benefit contributions. The alter ego doctrine "allows courts to treat two companies as the same entity when necessary to prevent either of them from manipulating its corporate form to evade its labor obligations." *Trs. of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 376 (6th Cir. 2019) (citation omitted). As AP's alter ego, DAP was equally responsible for AP's unpaid fringe benefits as soon as they became due and owing. Daniel Allor, who had control

over DAP's expenditures, breached his fiduciary duty by failing to make these contributions while continuing to pay other expenses, such as DAP's operating costs. Indeed, this conclusion aligns with the purpose of the alter ego doctrine, which is to prevent abuse of the corporate form. It also reflects Congress's intent for the term "fiduciary" under ERISA to be interpreted broadly. *See Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988). Therefore, the facts asserted by the DAP Defendants here are immaterial to the Court's conclusion that Daniel Allor is a plan fiduciary with respect to AP's unpaid fringe benefit contributions.

In conclusion, the Court finds that no mistake in the Court's breach of fiduciary duty finding has been identified. Reconsideration on these bases is thus denied.

### C. Clarification of "Work Covered by the CBA"

The Court's opinion holds that "DAP and AP were required to pay fringe benefit contributions for all employees who performed work covered by the CBA." ECF No. 101, PageID.5345. The DAP Defendants seek clarification as to what constitutes "work covered by the CBA." The Court is not in a position to provide such clarification. The parties agreed to bifurcate liability and damages. The parties' summary judgment briefing only addressed liability, and as such the parties did not provide briefing with respect to the precise scope of the work covered by the CBA. The Court believes that this issue relates to damages and is most appropriate for

resolution at trial.

**IV.**   **CONCLUSION**

Based on the foregoing, the DAP Defendants Motion for Reconsideration and

for Clarification [#107] is DENIED.

SO ORDERED.

Dated: April 3, 2025                                         /s/Gershwin A. Drain
                                                            GERSHWIN A. DRAIN
                                                            United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 3, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager
